Filed 2/7/25 P. v. Freed CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DAVID JOSEPH FREED,<br><br>    Defendant and Appellant. | D082987<br><br><br><br>(Super. Ct. No. SCE407649) |

APPEAL from a judgment of the Superior Court of San Diego County, Steven E. Stone, Judge. Affirmed.

Richard Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski and Laura Baggett, Deputy Attorneys General, for Plaintiff and Respondent.

David Joseph Freed appeals from his conviction of continuous sexual abuse of a child. He contends the trial court abused its discretion in admitting evidence that the victim, Lydia H., disclosed the sexual abuse to friends and family years after the abuse ended. Freed argues—under what has traditionally been known as the fresh complaint doctrine, but is now more accurately called the prior disclosure doctrine (see *People v. Flores* (2024) 101 Cal.App.5th 438, 443 (*Flores*))—Lydia's disclosures were "too stale" to be admissible. We disagree and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Lydia is the youngest of several siblings. When she was in elementary school her oldest brother was in high school. Of course, Lydia thought her brother was "cool" and tried to spend time with him and his friends whenever she could. She developed an innocent "crush" on Freed—her brother's best friend—and he "took interest in that."

Around August 2006, when Lydia was 8 and Freed was 18 years old, he began abusing her. He kissed her often and touched her vagina over her clothes about 20 times. He touched her vagina inside her underwear at least five times and inserted his fingers into her vagina at least once. She touched his penis over his pants once or twice. In her young mind, Lydia thought Freed was her "boyfriend" and this was "normal." The abuse continued until about June 2008, when she was 10 and he was 20 years old.

Lydia first realized she was abused in sixth grade when she watched an episode of "Law and Order, [Special Victims Unit]" depicting similar abuse. She stopped talking to Freed and her oldest brother around that time. Years later, when she was a senior in high school, her brother and Freed came into her room "very drunk" one night. Freed asked Lydia why she "hate[d]

2

everyone," to which she retorted, "I don't hate everyone.  I just hate you."
He then asked whether she "even remember[ed]."  She replied, "Do I
remember you molesting me?  Yeah."

Three or four years later, in October 2019, Lydia attended her middle
brother's wedding.  Freed was there too, and Lydia broke down.  She realized
she could not "bear this weight anymore" and decided to report the abuse to
the police.  She made a report in February 2020, but there was no movement
on the case for a while.

As discussed in more detail below, Lydia also told her close friends,
partners, and family members about the abuse slowly over time.  When her
middle brother realized what happened, he became distant from Freed.
Having noticed the change, Freed tried to figure out what was wrong.  In the
summer of 2020, the brother called Freed to explain; unbeknownst to Freed,
Lydia recorded the conversation.  At the outset of the call, her brother
confirmed the issue involved Lydia and asked Freed to give "side of the
story."  Freed said:

> "Well, um . . . she like, kinda, I guess had a crush on me,
> and . . . so, I was like, all right, maybe I'll see if this crush
> turns into anything.  If she continues to like me, I'll, you
> know, wait till 10 years, see if she still likes me.  Um, but
> then . . . she started to do like the kiss stuff.  I was like, all
> right, fine, well, whatever -- kiss.  And then like, nothing
> like sex -- like sex or anything happened, obviously.  But
> like just probably inappropriate stuff, that I just -- I was
> stupid and lonely at the time, and I fully regret it . . . .
> Like, I didn't have anybody at the time, and I was super
> lonely and depressed at the time.  And she was like the
> first person to show like affection towards me.  So, I was
> hopeful.  So, it just -- it -- it was stupid.  And I'll regret it
> for the rest of my life, and I told her that."

3

Freed specifically admitted to "touching her down there" in an inappropriate way when she was around seven years old.

Lydia gave the recorded call to the detective assigned to her case. The detective then arranged another pretextual phone call between Lydia and Freed in December 2020 In this call, he admitted that he touched her vagina "a dozen times or so" over the course of a year, beginning when she was 8 and he was 18 years old.

The prosecution charged Freed with one count of continuous sexual abuse of a child under 14 years of age (Pen. Code, § 288.5, subd. (a)). It also alleged two aggravating sentencing factors: that the victim was particularly vulnerable (Cal. Rules of Court, rule 4.421(a)(3)) and that she was under 11 years of age at the time of the offense (Pen. Code, § 1170.72).

At trial, Freed testified that he understood Lydia had a "kid's crush" on him. He allowed her to sit on his lap once and agreed to kiss her cheek once. The second time he agreed to kiss her cheek, she turned her head, causing him to kiss her lips. He otherwise denied any sort of sexual abuse. The defense also called several witnesses—including Lydia's oldest brother, two other friends from high school, and Freed's mother—who testified that they never saw any inappropriate behavior between Freed and Lydia.

A jury ultimately convicted Freed of the offense charged. In a bifurcated proceeding, the trial court found true that Lydia was particularly vulnerable; the prosecution withdrew the remaining allegation (which only applies to drug offenses). The court sentenced Freed to the low term of six years in prison.

## DISCUSSION

Freed contends the trial court abused its discretion in admitting evidence that Lydia told friends and family about the abuse over the years.

4

He argues her disclosures were "too stale"—i.e., too much time had lapsed between the abuse and the disclosures—to be admissible under the fresh complaint doctrine, now better known as the prior disclosure doctrine.

## A. *Prior Disclosure Doctrine*

"Historically, under the common law fresh-complaint doctrine, evidence that the alleged victim of a sexual offense disclosed or reported the incident to another person shortly after its occurrence" was admissible "for a limited, nonhearsay purpose—namely, simply to establish that such a complaint was made—in order to forestall the trier of fact from inferring erroneously that no complaint was made, and from further concluding, as a result of that mistaken inference, that the victim in fact had not been sexually assaulted." (*People v. Brown* (1994) 8 Cal.4th 746, 748–749 (*Brown*).) When the fresh-complaint doctrine was developed in the 19th century, it was premised on the idea that it was "natural for the victim of a sexual offense to promptly disclose the incident if it actually occurred." (*Id.* at pp. 749, 754–755.) Accordingly, a victim's "complaint must have been truly 'fresh' or 'recent' " to be admissible under the doctrine in its original form. (*Id.* at p. 756.)

By the late 20th century, however, the theoretical premise for the doctrine had been largely discredited. (*Brown*, *supra*, 8 Cal.4th at p. 758.) "The overwhelming body of current empirical studies, data, and other information establishes that it is *not* inherently 'natural' for the victim to confide in someone or to disclose, immediately following commission of the offense, that he or she was sexually assaulted." (*Id.* at p. 758.) This is especially true for child victims, who "commonly are reluctant to report such incidents and delay in doing so, or fail to provide a full report." (*Ibid.*)

In light of modern research, the Supreme Court revisited the fresh complaint doctrine in *Brown*, *supra*, 8 Cal.4th 746. The court observed that,

5

even if a victim "did not make a prompt complaint but instead disclosed the alleged incident only some time later, evidence of the fact and circumstances surrounding the" disclosure can nevertheless be relevant to decide whether the offense occurred. (*Id*. at p. 761.) Without evidence of the circumstances under which the victim ultimately disclosed the alleged offense to others, the jury could "be left with an incomplete or inaccurate view of all the pertinent facts." (*Ibid*.) Moreover, evidence of such circumstances, "including those that might shed light upon the reason for the delay, will reduce the risk that the jury, perhaps influenced by outmoded myths regarding the 'usual' or 'natural' response of victims of sexual offenses, will arrive at an erroneous conclusion with regard to whether the offense occurred." (*Id*. at pp. 761–762.)

Thus, instead of discarding the fresh complaint doctrine altogether, the *Brown* court revised and updated the concept to more accurately reflect "the basis upon which the admissibility of such evidence should be evaluated." (*Brown*, *supra*, 8 Cal.4th at pp. 762–763.) It pronounced that "evidence of the fact of, and the circumstances surrounding, an alleged victim's disclosure of the offense may be admitted in a criminal trial for nonhearsay purposes under generally applicable evidentiary principles"—namely, Evidence Code sections 210 and 352. (*Brown*, at p. 763.) The *Brown* court specified that "the admissibility of such evidence does not turn invariably upon whether the victim's complaint was made immediately following the alleged assault or was preceded by some delay"; in other words, "the 'freshness' of a complaint" is not an "essential prerequisite[ ] to the admissibility of such evidence." (*Id*. at pp. 750, 763.) Rather, the timing of the disclosure is simply a factor for the jury to consider in evaluating the evidence presented. (*Id*. at p. 763.)

Recently, in *Flores*, *supra*, 101 Cal.App.5th 438, this court recognized that *Brown* was ambiguous as to "what if any weight should be given to the

6

fact that the disclosure is delayed in determining its admissibility." (*Flores*, at p. 452.)  Upon surveying relevant decisions from other jurisdictions, we noted "a growing consensus among courts which have considered evolving jurisprudence and current research that a child victim's delay in disclosing sexual abuse should not affect the admissibility of the disclosure, but should instead be considered by the trier of fact as one factor in evaluating its weight." (*Id.* at pp. 452–454.)  Indeed, we observed that "[c]urrent research and jurisprudence have only reinforced what *Brown* recognized thirty years ago—'that it is not inherently "natural" ' for victims to disclose their abuse immediately, or in many cases, at all." (*Flores*, at p. 455.)

Consistent with this national trend, *Flores* clarified "that under California's version of this evidentiary rule, a child victim's delay in disclosing sexual assault generally goes to the weight of the disclosure, not its admissibility." (*Flores*, *supra*, 101 Cal.App.5th at pp. 454–455.)  A "disclosure should not be excluded solely because it is not 'fresh' enough." (*Id.* at p. 455.)  Accordingly, in light of the diminished importance of the timing of a child victim's disclosure, this court also joined the trend in encouraging "courts and commentators to abandon the 'fresh complaint' misnomer and refer to this evidentiary rule more accurately as the 'prior disclosure' doctrine." (*Ibid.*)

## B.     *Additional Background*

Before trial in this case, defense counsel preemptively moved to exclude three prosecution witnesses—Lydia's best friend, her older sister, and an ex-partner—in whom Lydia had confided about the sexual abuse.  Defense counsel argued that the delay between the abuse and Lydia's disclosure to these witnesses—at least four or five years—was too long for the testimony to be admissible under the fresh complaint doctrine.  In opposition, the prosecutor explained that the testimony was admissible for the nonhearsay

7

purpose of showing the fact that Lydia told friends and family about the abuse, and the circumstances surrounding her disclosures. The prosecutor emphasized that there was no particular time limit under the doctrine.

Based on the reasoning of *Brown*, *supra*, 8 Cal.4th 746, the trial court found that the evidence was admissible even though the disclosures in this case were not necessarily "prompt." Consistent with *Brown*, it allowed the witnesses to testify "that a complaint was made and the circumstances under which the complaint was made in a narrow fashion." The witnesses could not discuss "the underlying conduct at all."

On appeal, Freed challenges the prior-disclosure testimony of five witnesses: Lydia's best friend, her older sister, her middle brother, her sister-in-law, and her mother. (Her ex-partner did not testify at trial.)[1]

One of the first people to whom Lydia disclosed the abuse was her best friend when she was a freshman in high school, 14 or 15 years old. This friend recalled that they were in Lydia's room when she asked if she could tell him something. She was "visibly very uncomfortable" and tearing up. She turned off the lights and, with a trembling voice, told him "a little bit" about the abuse. After that, her friend noticed that Lydia stayed away from Freed and her brothers.

Toward the end of high school, after her oldest brother and Freed came into her room drunk, Lydia confided in her sister about the abuse. Her sister

---

[1]     Defense counsel objected to Lydia's middle brother's testimony and her mother's testimony on relevance grounds. He did not object to her sister-in-law's testimony. Because the court overruled all of counsel's objections, and the sister-in-law's testimony was not appreciably different from the other prior-disclosure testimony, we assume any objection to her testimony would have been futile. The People do not argue forfeiture. (See *People v. Zaheer* (2020) 54 Cal.App.5th 326, 337, fn. 9 ["forfeiture is excused when an objection would have been futile"].)

remembered that they were discussing another family matter in her room when Lydia told her that Freed molested her when she was eight or nine years old. Lydia seemed "embarrassed" and "shy" at the time. Her sister similarly noticed that Lydia avoided Freed whenever he visited the house.

Sometime in 2017, Lydia told her middle brother that there had been some "misconduct" or "inappropriate" behavior between her and Freed. He recalled seeing them kiss once, but he was too young at the time to realize it was wrong. When he had the phone call with Freed in the summer of 2020 and learned the extent of the abuse, he ended their friendship for good.

Lydia confided in her sister-in-law in July 2020, after the wedding and police report. Her sister-in-law was driving Lydia to her parents' house when she told her "that it had happened" without going into detail. She was appalled and told her husband, Lydia's middle brother, that she was uncomfortable with him spending time with Freed. The phone call took place soon after that.

Finally, Lydia's mother testified that she told both parents about the abuse in May 2021. Lydia seemed angry while she was telling them, but then relieved to have told them.

C.    ***The Trial Court Reasonably Admitted The Prior Disclosures***

Here, the trial court did not abuse its discretion in admitting evidence that Lydia disclosed the abuse to various friends and family over the course of several years. (See *Flores*, *supra*, 101 Cal.App.5th 438 [" 'We review claims regarding a trial court's ruling on the admissibility of evidence for abuse of discretion' "].) Consistent with *Brown* and *Flores*, the trial court correctly recognized that this evidence was not inadmissible merely because Lydia did not begin telling others about the abuse until she was a freshman in high school—which would have been about four or five years after the abuse

9

ended. Any delay between the abuse and Lydia's disclosures was a factor for the jury to consider in assessing the weight and significance of the evidence.

Under general evidentiary rules, the testimony was relevant to show that Lydia, in fact, told others that she was abused, and the circumstances surrounding her disclosures. Indeed, Lydia's confidantes testified that she was upset, nervous, embarrassed, and angry when she told them what had happened to her. This was consistent with Lydia's testimony that even after she realized she was abused, she did not tell anyone right away because she "felt a lot of shame" for several years. She was only able to tell friends and family members that she felt close to, and even then she could only provide basic information. The testimony also showed that Lydia tended to disclose her abuse after confronting Freed; she told her older sister after Freed and her oldest brother came into her room, and she told multiple family members after seeing Freed at the wedding. This evidence helped to "shed light upon the reasons" for Lydia's delayed disclosures and "tended to forestall any erroneous inferences that might have arisen in the absence of that evidence." (*Brown*, *supra*, 8 Cal.4th at p. 764.)

Moreover, the trial court properly limited the testimony to the fact that Lydia was abused or molested, her demeanor while disclosing, and when and where each disclosure took place. The challenged witnesses did not describe any details about the abuse. (See *Brown*, *supra*, 8 Cal.4th at p. 763 ["in light of the narrow purpose of its admission, evidence of the victim's report or disclosure of the alleged offense should be limited to the fact of the making of the complaint and other circumstances material to this limited purpose"].)

Even assuming the court erred in admitting this limited testimony, we see no reasonable probability the jury would have acquitted Freed absent this evidence, given his incriminating statements in the two recorded phone calls.

10

(See *People v. Watson* (1956) 46 Cal.2d 818, 836.) We acknowledge Freed's claim that he falsely admitted to abusing Lydia in order to "appease" her and "give her closure," because he believed that was the only way he could remain friends with her middle brother. But in convicting Freed, the jury necessarily rejected his explanation.

## DISPOSITION

The judgment is affirmed.

DATO, J.

WE CONCUR:

HUFFMAN, Acting P. J.

RUBIN, J.